Good morning, Your Honors. May it please the Court, my name is Jonathan Libby and I appear on behalf of the appellant Armando Diaz-Rivera. This Court has made clear that being a deported alien found in the United States is neither a status offense nor a strict liability crime. Yet in this case, the District Court essentially concluded it is such a crime and precluded as irrelevant defense evidence regarding both the involuntary nature of Mr. Diaz's return to the United States. Are you still contending that the voluntariness of an alien's re-entry is an essential element of being found in? No, Your Honor. All right, good, because that's just confusing the case and you push that in the trial court down below, but that appears to have been done in by the Ninth Circuit Court of Appeals. By Pena Hyman. Exactly. Correct. Correct. So what I would say is it is still possible for the government to prove that he was in the United States through any legal re-entry. And so what we have is a situation here where there was no, the defendant wasn't given a... So I read it, your point is, even though we're really dealing with only a found in, if you can show that his presence is involuntary, forget the entry, that may be circumstantial evidence that might support it, but if his current presence is involuntary, that's your point, and that you were prohibited from doing this by the trial court. Correct. Where was your offer of proof? Well, there was an offer of proof obviously with respect to the sister, to Sasha Diaz. All she talked about was the entry itself. I failed to see an offer of proof as to the found in, the presence being involuntary. I mean, you were focused on that entry, trying to make that an element of the offense, and it seems that the issue that you're now pushing got lost in that. Well, there was no proper given, that's certainly true. That's right. And perhaps that would have made things better for us, but Mr. Diaz was asked the relevant question, which was, do you know how it is that you happen to be in Ventura County in 2001, which is when he was found? That's about seven degrees off-center from the real issue, is whether his presence at that time was voluntary or involuntary. Well, 2001 is referring to when he was found. But how you happen to be in, and that's pretty vague. I would have thought that had you been focused on the issue that you now admit is the issue, you would have made an offer of proof when the government kept objecting. He said, Your Honor, we offered a proof that my client was drunk out of his mind the entire time he was here. He was in a hospital under all kinds of drugs and didn't even know where he was. But that's absent. Well, that's true. Though he was asked the question, do you know whether you were hospitalized in that year? What appellate court. And if you fail to make an offer of proof. Well, I think part of the problem here is, though, the district court made it very clear that none of that was relevant. What Judge Cooper said was. That's basic lawyering. You say, yes, it is, Your Honor, and I make an offer of proof. That's the way you preserve your point. Well, what the court said is there's nothing for this jury to decide. What the judge said. What was your offer of proof? If you had been allowed to proceed, what would your client have said? Well, I believe what he would see would have said. First off, similarly, what's the of the offer of proof for the sister was. But in addition to that, that he was drunk when he came in. Right. That he was completely incoherent when he was brought in. He was taken to a hospital long before he was found. And did that occur? That was approximately a year. So he was drunk for a year. Well, he was hospitalized. He was then being followed by the hospital on a weekly basis. He was in and out of the hospital continuously. Did you bring in any doctors or any hospital records or anything like that to show that his presence was involuntary? No, Your Honor, because the court, in fact, said it's not relevant. The court said none of this is relevant because I'm not going to beat this horse until it dies again. But that's what offers of proof are all about. I certainly understand, Your Honor. And and perhaps defense counsel should have given one. But that that wasn't done here. And the district court made very clear that she did not believe it was necessary to to present any of this evidence regarding either involuntary entry or it seems because you kept pushing the idea that it was that voluntariness of the entry was an element of the offense. Correct. And I think that's certainly because the case law at that time was somewhat confusing. Now got lost in that drumbeat. That's correct. That's certainly right. But that was what it appeared the case law was at that time. And since the opening brief was filed in this case, this court has now clarified that. But the case law at the time seemed to suggest that the voluntariness of the entry is, in fact, an element of the offense of being founded. So how does that help us now, though? Well, again, I courts still I think even behind me recognizes that the government can still prove their case by demonstrating that you voluntarily reentered here, that that is one method of proving this. Wouldn't you have basically, though, had to prove that for a year that he was drunk or in the hospital? Well, yes. And I certainly would acknowledge that the facts presented to the jury would needed to have been strong and demonstrated exactly that. The problem was, of course, we weren't permitted to present anything to the jury. This was, in fact, the court treated this as a strict liability offense, that he was here. And that's all that mattered. But wouldn't we have to speculate that, I mean, without an offer of proof, we would have to speculate that you would be able to show that for a year he was drunk or in the hospital? Well, certainly that's the evidence that the defendant would have had to present. That's correct. He was asked the question, though, and not permitted to answer the question. He was never given the opportunity to present the evidence. As an officer of the court, are you telling us that your client is prepared to testify that at all times after he was brought back into the United States that he was incoherent and did not know where he was, didn't understand he was in the United States? As an officer of the court, I cannot say that that is what he would testify to. I appreciate your candor. Sure. But he certainly would have said that he was in and out of the hospital. He suffered from numerous medical conditions. In addition to his chronic alcoholism, he was suffering from cirrhosis of the liver, hepatitis, tuberculosis, lung disease. He was physically unable to perhaps himself voluntarily leave the country. He needed help to get here. He was also going to need help to get out. So is that in the record, that he couldn't physically leave because of all his illnesses? No, again, because the defendant wasn't given an opportunity to answer the question, because the court completely precluded it. And that's what it was. The court misunderstood that the defendant has the right to explain away this presumption. Well, you say the court was confused. I think if the court was confused, that it's because you kept pounding on the idea that voluntariness was an element. Well, in the Rule 29 and Rule 33 motion that was filed after trial, the argument was in fact made that we were prevented from arguing either of those points. And the judge again said it doesn't matter. Too little, too late. Well, I mean, what she said was, you know, it's not an element of the offense, when in fact it is an element of the offense. I mean, if there is this, if being found at distance from the border is in fact circumstantial proof, if a defendant is not given the opportunity to rebut that, then essentially you are saying it's a status offense. Why don't you retain the rest of your time for rebuttal? Will do. And we'll hear the government. Thank you. Good morning, Your Honors. May it please the Court. My name is Joey Blanche, and I represent the government in this case. At trial, the defendant admitted that he had been in the United States for more than a year before he was found by the INS. And the district court specifically said that the issue was what happened when the defendant sobered up and realized he was in the United States. When the district court recognized that this was the issue, defense counsel remained entirely silent. There was never any response to the district court's invitation to present evidence that the defendant's stay in the United States was not voluntary. The district court's ruling has been characterized as defining the found-in offense as a status offense, but that's actually not true. Although this court certainly reiterated the standard that the issue is the voluntariness of the stay in Pina Jaime in Quintana Torres in the year 2000, this court has already stated that remaining in the United States, even following an involuntary reentry, would satisfy the found-in offense. And the district court specifically pointed to the fact that the issue was what happened when the defendant realized he was here in the United States. Well, would your strongest position then be that the district court was correct on its ruling that it wasn't relevant because how he entered didn't matter and that there's no record of, there's no record of or offer of proof as to the remaining? That's absolutely correct, Your Honor. The district court was correct that the reentry was irrelevant and that there was no offer of proof about the voluntariness of the remaining. In fact, the district court specifically found that no evidence had been presented regarding the voluntariness of the defendant's stay in the United States, nor could any evidence... Well, what about the question, you know, whether you were hospitalized in Ventura County in that year and then there was an interruption, objection, relevance, yes I was, and then there's a ruling that it's irrelevant. It seems that under the state of the law, if somebody is hospitalized for the entire time in an incoherent state, that would be a defense defendant. Well, a couple of responses to that, Your Honor. The first is you have to take that question in the entire context of the questions that were being asked. The defense counsel asked the defendant a series of questions about whether or not he realized he was reentering the United States when he came, and also at sidebar, he had proffered the defendant's So after that long series of questions that had been objected to regarding the voluntariness of defendant's reentry, when the final question was, were you hospitalized, when the court sustained the objection, she sustained it on the grounds that this was an issue that already had been discussed at sidebar, and the issue that had been discussed at sidebar was solely the voluntariness of the defendant's reentry. Further, it's been suggested that there was no evidence before the court regarding the voluntariness of defendant's reentry, and it's true that no evidence was presented to the jury regarding the voluntariness of defendant's reentry. However, defense counsel proffered an exhibit to the court containing the defendant's medical records, and the court rejected that as being irrelevant. Those medical records are in the excerpts of records. Did they show that he was in the hospital or drunk for a year? No, they don't. In fact, they show that the defendant had been able to enter into the hospital and see various doctors under his own power on numerous occasions. Most specifically, in the proffered exhibit 101, there was a doctor's report dated February 14, 2001, where the doctor specifically finds that the defendant was under no acute distress. He was able to get in and out of chairs without difficulty. He walks without a limp. He was able to walk on heels and toes. His diagnosis was that he had a history of liver disease, but this was controlled on taking medication. The doctor found that he had a functional capacity of 25 pounds frequently and 50 pounds occasionally, that the defendant could stand and walk cumulatively of six hours and sit six hours, that he had normal conversation, hearing, and speech, and that the defendant reported he could travel by car or bus if necessary and perform basic activities and move and handle objects. He was an outpatient at that time? That's correct, Your Honor. And those were medical records that were proffered to the was irrelevant to the issue of, excuse me, that the court excluded as it was proffered for the purpose of showing that because the defendant was ill, he was, his reentry was involuntary. Do you have anything else? I do not, Your Honor, unless you have any further questions. Thank you. You may respond. Thank you. There it is. The hospital records show he was an outpatient and functioning, even though he may have had liver disease. Well, as I said earlier, Your Honor, he was in and out of the hospital. There's no question about that. But how, if, let's just assume, let's assume that you were focused on the wrong issue, but if he had been in the hospital, in and out, and drunk for the year following, that would be fabulous evidence on that point. So now, and that wasn't entered on that point even. So now you want us to assume that even though it wasn't entered on that point, that we should even consider it on another point. Well, I mean, I will say that at the time he was found, he in fact was passed out drunk laying on trinkets. Well, he's a drinker. I think you got that. That's right. So at the time he was found, he was in fact drunk and incoherent again. Look, the district court, let me say this in terms of just, again, about the ruling. When the district court excluded the evidence, it indicated the defendant doesn't have to be here willfully. He doesn't have to be here knowingly. He just has to be physically present after being deported. The cases are very clear. I'm going to preclude the testimony because there's just nothing for this jury to decide. Even in Pena-Hyme, what this Court said was there needs to be a showing of willfulness or that he's only there. You're asking us to say, not only are you wrong on what you ruled on, but you're also wrong on issues that were never put before you that you would have no idea that someone would be reviewing. I mean, that's putting a trial court at an incredible disadvantage so that they should just imagine what anyone could ever bring up even though the lawyers never even cover it? Except that it does still go to the point that even under Pena-Hyme, the government can still use an involuntary re-entry, a voluntary re-entry to demonstrate proof under the Fountain provision. So even there, we should have the opportunity to try to explain that aspect away. And that was not permitted here. Then we could have gone to the next step. Once we showed it was an involuntary re-entry, then we could have gotten to, well, and it also wasn't a voluntary presence. But the jury was never given the opportunity to hear the evidence. And they're the ones who should have been making the decision. Thank you, counsel. Thank you. The time has expired. The case is ordered and submitted. We appreciate your help. We'll move to the next case on the calendar, which is United States v. Jorge Rodriguez Rodriguez.
judges: Hall, Trott, Callahan